KRAUSE, Administratrix, Appellant, vs. CITY OF MERRILL, Respondent.

*October 22—November 11, 1902.*

*Highway: Unguarded embankment: Injury to traveler: Contributory negligence.*

Plaintiff's intestate, while traveling in the evening on a highway, voluntarily turned his team at right angles to the traveled roadway and drove down an unguarded embankment to a railroad track, and then, instead of attempting to extricate himself from danger, drove beside the track with the wheels on one side so elevated on the bank that after going a few feet the wagon tipped over, catching him under the box in such a way that he was killed. He had been drinking, but was competent to manage the team, which was very slow and gentle and at no time got beyond his control. *Held,* that he was guilty of contributory negligence, precluding a recovery for his death.

APPEAL from a judgment of the circuit court for Lincoln county: W. C. SILVERTHORN, Circuit Judge. *Affirmed.*

This is an appeal from a judgment of nonsuit granted at

the close of all the testimony, in an action to recover damages for the death of the plaintiff's intestate, alleged to have been caused by a defect at the west end of Division street in the defendant city.

It appears from the record that the deceased, Edward Krause, lived in the town of Cornish, about six miles west of the city of Merrill; that about 8 o'clock on the evening of October 17, 1900, he started toward his home with a team and wagon, driving in a westerly direction, and, instead of turning at the intersections of State and Division streets, or Cottage and Division streets, to get to his home, he continued driving directly west on Division street to the place where the accident occurred. At the end of Division street there was an embankment eighteen feet higher than the spur railroad track below, running northwest and southeast for a considerable distance north of the north line and south of the south line of that street. There were no barriers or lights at that place to warn travelers and prevent them from going over such embankment. After Division street terminated, as it appears on the record plat, there was a traveled track or roadway extending in a northwesterly direction onto private property, and used as a sort of an alley by the property owners living in the block north of the west end of Division street. Just at the place where this traveled track turns north, and right at the north line of the west end of Division street, there was a shed, from the southwest corner of which it was twenty-two feet directly southwest to the edge of the embankment, the first twelve feet of which was level, but the remaining part of which was rough and sloping to the edge of the embankment; and from there there was a gradual descent down to the bottom of the embankment, near the spur track of the Chicago, Milwaukee & St. Paul Railway Company, running in a northwesterly direction. From the southwest corner of the shed directly west to the edge of the embankment was a distance of only about sixteen feet, the west-

ern part of which was rough and uneven and sloping toward
the edge of the embankment.

The deceased drove west on the traveled track or roadway,
gradually turning to the north as he came near the southwest
corner of the shed, and thence directly north, and when he
reached a point about twelve feet north of that corner of the
shed his horses turned from the traveled track, and went di-
rectly west to the bank, and over the edge thereof substan-
tially at right angles with the traveled track leading north,
and down over the bank to the railroad spur track below;
gradually turning to the left or southwest until they reached
the bottom down near the railroad spur track. The wagon
passed along by the side of the railroad southerly, for about
the length of two horses, in such a manner that the left
wheels were higher than the right ones, so that the wagon
tipped over to the right and toward the railroad track. From
the top of the embankment where the deceased drove over,
straight down to the spur track, was about twenty-five feet.
From the point where the horses went over the edge of the
embankment to the place where they stopped was about thirty
feet. The slope appears to have been gradual, but rough and
irregular. The nearest light from where the accident oc-
curred was an arc light at the intersection of Division and
State streets, about two and one-half blocks away, or about
.750 feet east of the place of the accident; and the edge of
the embankment on a direct line with the center of Division
street was five feet higher than the point where such light
was located. The night was dark, and there was no moon.
There was a double box on the wagon, and the deceased had
three kegs of beer in the box. The indentations made by the
wheels and the horses' tracks showed that they did not go
rapidly, and were not unmanageable in any way, but went
slowly,—the marks of the horses' feet being straight in,—
showing that the team stopped or nearly stopped just as they
passed over the edge of the embankment going down. The

following morning the wagon was found tipped over toward the railroad track, with the body of Krause under the box, lifeless, the horses still there,—one of them hitched by one tug, and the other slightly hitched to the wagon by a strap,—in which condition they appeared to have been all night. The wagon was lying parallel with the railroad track, with the tongue turned around to the right and upon the railroad track. The body of Krause was lying three or four feet from the track, with the edge of the box across his body.

The cause was submitted for the appellant on a brief by *Bump, Marchetti & Bump* and *F. J. Smith,* counsel, and a supplemental brief by *Bump, Marchetti & Bump,* attorneys, and for the respondent on the brief of *M. C. Porter,* attorney, and *W. H. Flett,* of counsel.

CASSODAY, C. J. The facts in this case are practically undisputed, and substantially as mentioned in the foregoing statement. In granting a nonsuit, the trial court assumed that the evidence was sufficient to take the case to the jury on the question as to whether the traveled track west and north of Division street was a public highway, and, if so, whether it was defective. The nonsuit was granted on the ground that after driving about twelve feet north of the southwest corner of the shed the deceased, as indicated in the statement of facts, voluntarily turned his team, which was going directly north, around to the west, and then drove the same directly west, over and down the embankment, to the bottom, near to the spur track; and then, instead of attempting to extricate himself from danger, he drove in a southeasterly direction, and parallel to the spur track, with the off wheels at the bottom of the embankment and the near wheels so elevated that, after driving a few feet, the wagon tipped over toward the spur track, and caught him under the box in such a way that he expired before morning. The evidence is uncontradicted

that he had a very slow, gentle team; that although he had
been drinking more or less, yet that he was competent to man-
age his team, and at no time lost control of his team.    This
is apparent from the manner of going down the embankment
with the three kegs of beer rolling about in the wagon box,
and the deceased remaining on or in the box until the wagon
tipped over and onto him.    Nothing need be added to the un-
disputed evidence.    From that it appears that the deceased
was guilty of contributory negligence, and hence that the
nonsuit was properly granted.    If authority is needed to sup-
port so plain a proposition, we would cite the following:
*Hawes v. Fox Lake,* 33 Wis. 438; *Goellz v. Ashland,* 75
Wis. 642, 44 N. W. 770; *Welsh v. Argyle,* 89 Wis. 649, 62
N. W. 517; *Stricker v. Reedsburg,* 101 Wis. 457, 77 N. W.
897.

*By the Court.*—The judgment of the circuit court is af-
firmed.